UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OSCAR CONTRERAS AGUILAR,

      **Plaintiff,**

v.                                       **Case No: 5:25-cv-396-MSS-PRL**

DONALD J. TRUMP, ATTORNEY
GENERAL OF THE UNITED
STATES, WILLIAM K.
MARSHALL, E. K. CARLTON and
SHANNON D. WITHERS,

      **Defendants.**

_____

## ORDER

Plaintiff is a transgender woman federal inmate proceeding pro se. (Doc. 11). In her Amended Complaint, Plaintiff, who has been in federal custody since 2017, states she has been diagnosed with gender dysphoria and has been receiving gender-affirming treatment, including hormone replacement treatment, since July 2024. *Id.* at 12. On January 20, 2025, President Trump issued Executive Order 14168 ("EO") which provides that federal funds shall not be spent on any medical treatment for the purpose of conforming an inmate's appearance to that of the opposite sex. *Id.* The EO further directed agencies to "remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages." *See* Exec. Order 14168,

*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615, 8616 (Jan. 20, 2025). In response to this directive, the Bureau of Prisons ("BOP") "cancelled/rescinded in its entirety the BOP's Transgender Offender Manual P.S. 5200.08 ('transgender policy'), and directed its removal from federal prison libraries and the BOP intranet." (Doc. 11 at 14). Plaintiff moves for a Temporary Restraining Order (Doc. 4) seeking to have the Court direct the BOP to follow the Transgender Offender Manual[1] ("the Manual") that was in effect prior to the issuance of the EO by *inter alia* discontinuing pat-down searches by male prison guards on female transgender inmates.

The Manual was created to "ensure the [BOP] properly identifies, tracks, and provides services to the transgender population."[2]  Among the guidance provided by the Manual are:

### 13. PAT SEARCH ACCOMMODATIONS

Pat searches of transgender inmates will be conducted in accordance with the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**.

Pat search information refers only to individuals at male facilities who identify as female. The Bureau does not offer "male only" pat searches.

---

[1] The BOP's website has removed the Manual from its website. In its place it notes the following: "As we continue to work to ensure compliance with the Executive Order on "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," policies will gradually become available as they are cleared through our review process." BOP: Policy & Forms, https://bop.gov/resources/policy_and_forms.jsp. (last visited Oct. 1, 2025).

[2] A copy of the Manual will be attached to this Order.

Unless there is a history of inappropriate sexual behavior suggesting approval poses risks to staff, requests are ordinarily approved by the Warden's Office. Inmates may request denials be reviewed by the TEC through the Administrative Remedy Program. Inmates who are granted this exception under policy may have it reversed by the Warden if found to have violated institution rules concerning contraband.

In exigent circumstances, any staff member may conduct a pat search of any inmate consistent with the Program Statement **Searches of Housing Units, Inmates, and Inmate Work Areas**.

## 14. VISUAL SEARCHES

For purposes of a visual search, inmates will be searched in accordance with the gender of the institution, or housing assignment, to which they are assigned. The visual search shall be made in a manner designed to ensure as much privacy to the inmate as practicable. Staff should consider the physical layout of the institution, and the characteristics of an inmate with a transgender CMA assignment, to adjust conditions of the visual search as needed for the inmate's privacy.

Transgender inmates may also request an exception to be visually searched by a staff member of the inmate's identified gender. The exception must be pre-authorized by the Warden, after consultation with staff from Health Services, Psychology Services, Unit Management, and Correctional Services. Exceptions must be specifically described (e.g., "visual search only by female staff"), clearly communicated to relevant staff through a memorandum, and reflected in SENTRY (or other Bureau database). Inmates should be provided a personal identifier (e.g., notation on identification, etc.) that indicates their individual exception, to be carried at all times and presented to staff prior to visual searches.

Inmates request an exception by submitting an Inmate Request to Staff (BP-A0148) to the Warden. The Warden will consult with the departments listed above, and the memo approving or denying the request will be generated by the Warden's Office. Inmates may request denials be reviewed by the TEC through the Administrative Remedy Program. Inmates who are granted this exception may have it reversed by the Warden if found to have violated institution rules concerning contraband.

Transgender inmates placed at an institution or in a housing unit that does not correspond with their identified gender, and who are granted an

exemption as indicated above, will be searched by staff of the inmate's identified gender who consent to participate in the search, or Health Services clinical staff.

Transgender inmates placed at an institution or in a housing unit of their identified gender will be searched by staff of the inmate's identified gender who consent to participate in the search or medical staff.

Institutions should consider using available body scanning technology in lieu of visual searches of transgender inmates.

In exigent circumstances, any staff member may conduct a visual search of any inmate consistent with the Program Statement Searches of Housing Units, Inmates, and Inmate Work Areas.

*The Manual* at 11–12.

Following the EO, Plaintiff claims she has been "strip searched at least twice in front of male guards" where she was "forced to get completely naked and show the male guards her butt by bending over, spreading her butt cheeks and squatting." (Doc. 11 at 15). She has also been pat searched by male guards "at least seven times" over her objections. *Id*. In each of those pat searches, the male guards groped her breasts. *Id*. at 17. In response to her objections, guards have responded by mocking and harassing Plaintiff, saying "You are not a woman. You are a man in a men's prison" and "President Trump doesn't allow us to treat faggots and queers as women anymore." *Id*. at 15. BOP staff are also "deliberately and maliciously, with the intent to harass, misgendering Plaintiff by referring to her using male pronouns. *Id*. at 17.

After initiating this action, Plaintiff has filed multiple requests via email to Warden Carlton requesting a yellow identification card which would permit her to

only have female guards perform pat and strip searches. (Doc. 23 at 2). Plaintiff has not received a response to any of the emails or to her administrative remedies. *Id*.

To obtain a temporary restraining order, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). Additionally, a court may issue temporary injunctive relief without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

To begin, the Court is satisfied that Plaintiff has fulfilled the procedural requirement needed to issue a temporary restraining order. Plaintiff has set out specific facts showing that immediate and irreparable injury may (and has) result before the adverse party can be heard—namely, Plaintiff has been repeatedly groped by male guards in violation of the Prison Rape Elimination Act ("PREA") of 2003 the BOP's

Sexually Abusive Behavior Prevention and Intervention Program, P.S. 5324.12[3] and

28 C.F.R. § 115.6[4] following the issuance of the EO. Plaintiff has mailed copies of the

Motion for a TRO to the Warden and to Williams K. Marshall, the BOP Director, *see*

Doc. 17, and a copy of the initial complaint was sent to the "federal official where the

[Plaintiff] is confined, *see* Doc. 5 at 2. Nothing more is needed at this point.[5]

Turning to the merits, Plaintiff has shown a substantial likelihood of success.

"The Constitution does not mandate comfortable prisons but neither does it permit

inhumane ones, and it is now settled that the treatment a prisoner receives in prison

and the conditions under which he is confined are subject to scrutiny under the Eighth

Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up). By prohibiting

"cruel and unusual punishments," the Eighth Amendment both "places restraints on

---

[3] This Program Statement was implemented:
> To provide a written policy that implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and to provide guidelines to address the following prohibited and/or illegal sexually abusive behavior involving:
> - Inmate perpetrator against staff victim.
> - Inmate perpetrator against inmate victim.
> - Staff perpetrator against inmate victim

P.S. 5324.12 at 1.

[4] This section defines sexual abuse of an inmate by a staff member as: any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member … has the intent to abuse, arouse, or gratify sexual desire. *See* 28 C.F.R. § 115.6

[5] Additionally, on August 7, 2025, Conor P. Flynn, Assistant United States Attorney, filed a Notice of Appearance on behalf of the United States, to respond to an Order directing the Warden to advise the Court whether the BOP is complying with the June 3, 2025 injunction issued in *Kingdom v. Trump. See* Docs. 15, 18. Finally, by Order dated October 1, 2025, the United States Marshal was directed to serve the Amended Complaint. (Doc. 28).

prison officials" and "imposes duties" on them. *Id.* at 832. Prison officials are restrained from sexually abusing incarcerated persons because "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). A prisoner seeking prospective relief "for unsafe conditions," does not, however, need "to await a tragic event such as an actual assault before obtaining relief." *Id.* at 845 (cleaned up).

Here Plaintiff claims that she has been subjected to sexual abuse by male guards each time they have performed a pat down search on her since the issuance of the EO. (Doc. 11 at 17). Plaintiff has also been strip searched at least twice in front of male guards and regularly mocked and harassed. *Id.* at 15. Based on the repetitive nature of the abuse Plaintiff has suffered and will continually suffer if subjected to pat down searches, Plaintiff has met her burden establishing a likelihood that there is a deliberate indifference to her future risk of sexual abuse without judicial intervention.

Plaintiff has likewise demonstrated irreparable injury in the absence of immediate relief. She alleges that since the implementation of the EO she has been repeatedly sexually abused by prison staff and strip searched in front of male guards in violation of the Eighth Amendment, 28 C.F.R. § 115.6 and PREA. Without interim relief, Plaintiff could be sexually abused by male guards during any future pat-down search. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020).

Lastly, the balance of equities and public interest favors injunctive relief. The latest update of the Manual was approved on January 13, 2022 and was followed at least until the issuance of the January 20, 2025 EO. Requiring female guards to pat down Plaintiff, when they had been doing so for at least the past three years, would result in minimal harm to the government. Additionally, "it is always in the public interest to prevent the violation of a party's constitutional rights." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc). On balance, the equities favor Plaintiff at this stage of the proceedings.

The Court also exercises its discretion to dispense with Rule 65(c)'s bond requirement. There is no realistic likelihood of harm to the Respondents from the relief ordered. Thus, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by ... hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Ajugwe v. Noem*, No. 8:25-CV-982-MSS-AEP, 2025 WL 1370212, at *10 (M.D. Fla. May 12, 2025).

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 4) is **GRANTED** as follows.

   a. Pat down searches and strip searches of Plaintiff are to be conducted by female guards only, until the Court conducts a hearing on the matter and makes a final determination.

   b. A hearing on the Motion will be set by future order.

2. The security required by Federal Rule of Civil Procedure 65(c) is waived.

3. Plaintiff's Motion for a Ruling (Doc. 23) is **DENIED** as moot.

**DONE AND ORDERED** in Tampa, Florida, on October 3, 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to: Pro Se Party, Counsel of Record



Transgender-Offen
der-Manual—-BOP-I