In The United States District Court
For The Middle District of Florida

1 of 9

Oscar Contreras Aguilar,
AKA: Fendii G. Skyy,
Plaintiff,
V.
Donald J. Trump, et al.,
Defendants

Civil No. 5:25-CV-396-MSS-PRL

PLAINTIFF'S RESPONSE TO "DEFENDANTS' MOTION TO DISSOLVE AND OPPOSITION TO THE OCTOBER 3, 2025 PRELIMINARY INJUNCTION"

No good deed goes unpunished. After the Court granted defendants the very same relief which they sought – a stay of the instant case – (Docs. 29 and 32), defendants now turn around and, grasping for a leg to stand on, attempt to blame the Court for not having held a hearing on plaintiff's motion for a T.R.O. & Preliminary Injunction (Doc. 4) while this case was stayed on defendants' own request due to the lengthy government shutdown that took place (Doc. 29).

As defendants bemoaned to the Court in their motion: "Department of Justice attorneys and employees of the Federal defendants are prohibited from working, even on a voluntary basis, except in very limited circumstances..." id., at 1-2.

More importantly, in that same motion defendants requested that "all current deadlines for the parties be extended commensurate with the duration of the lapse of appropriations". id., at 2.

As such, defendants should not be allowed to have their cake and eat it too.[1]

Turning to the other arguments in defendants' motion to dissolve (Doc.54), defendants first claim is that "plaintiff's claims are not properly before the Court because plaintiff failed to exhaust administrative remedies... before filing this lawsuit." id., at 2. Plaintiff disputes that she failed to exhaust administrative remedies. And Plaintiff will prove that BOP staff at USP Coleman 2 made administrative remedies unavailable when she files her response in opposition to defendants' motion to dismiss (Doc.49).

At this juncture though, the Court should decline to entertain repetitive arguments that were already raised by defendants in their motion to dismiss (Doc.49). The Court should also decline to entertain contested factual questions on a motion to dissolve a preliminary injunction. see Bardfield v. Chisholm Props. Circuit Events, LLC., 2009 WL 1940575, at *1 (N.D. Fla. July, 6, 2009)(declining to resolve legal and factual issues on a motion to dissolve a preliminary injunction.).

---

[1] Even if the Court would've held a hearing on plaintiff's motion for a T.R.O. & Preliminary Injunction(Doc.4) during the government shutdown, defendants' attorneys would not have shown up at such hearing because they were "prohibited from working" at the time, and as such plaintiff's motion for a preliminary injunction would've been granted as unopposed anyways.

The second argument defendants raise in their motion to dissolve (Doc. 54) is that "plaintiff cannot demonstrate a substantial likelihood of success on the merits — entitlement to a search accommodation — because plaintiff's record of violations of the institution's rules on contraband *likely* disqualifies plaintiff from any search accommodation under Federal Bureau of Prisons (BOP) policies." id., at 2.

Defendants seem to think that being protected from sexual assault, abuse, and harassment, repeatedly, by male guards is a mere "search accommodation" to which plaintiff is not entitled to. id., at 2.

Not surprisingly, nowhere in either their motion to dismiss (Doc. 49) or motion to dissolve (Doc. 54) do defendants address (or even mention) the Eighth Amendment which is what, ultimately, compelled the Court to intervene and grant emergency and preliminary relief to protect plaintiff from any further sexual assault, abuse, and harassment by male guards on plaintiff (who is a 28-year old, very feminine, transgender female inmate).

Instead, defendants conveniently rely heavily & exclusively on BOP policy — the very same policy which was recently modified/amended to comply with, and reflect, defendant Trump's anti-transgender & discriminatory personal views and political agenda — and overlook that in granting plaintiff's motion for a T.R.O. & Preliminary Injunction (Doc. 4), the Court relied on the 8th Amendment; Doc. 31, at 6-7.

To be sure, in its Order granting plaintiff a T.R.O. and a preliminary injunction (Doc. 31), the Court did cited the BOP's Transgender Offender Manual in its analysis of plaintiff's verified amended Complaint (Doc. 11) and Motion for a T.R.O. and preliminary Injunction (Doc. 4).

But, still, the Court clearly relied on the Eighth Amendment, not BOP policy, in granting relief.

As the Court stated in its Order granting plaintiff's motion for a T.R.O. & Preliminary Injunction (Doc. 31):

"By prohibiting cruel and unusual punishments, the Eighth Amendment both places restraints on prison officials and imposes duties on them. Prison officials are restrained from sexually abusing incarcerated persons because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society...

A prisoner seeking prospective relief for unsafe conditions, does not, however, need to await a tragic event such as an actual assault before obtaining relief." (citations and quotations omitted). id., at 6-7.

Furthermore, defendants, in their motion to dissolve, suggest that because of "plaintiff's record of violations" of BOP rules she is "likely" disqualified "from any search accommodation" under BOP policies. Doc. 54, at 2. This argument does not pass muster.

First, there are over 20 transgender female inmates with a gender dysphoria diagnosis at USP Coleman 2, and the majority of them do not have any "record of violations" of institutional rules on contraband. Yet, not one of them — except the plaintiff here — has been granted a search accommodation by defendants under BOP policies. And the plaintiff here only has that type of protection because of judicial intervention by this Court (Doc. 31). In other words, besides plaintiff, there are zero female transgender inmates with a "search accomodation" here at USP Coleman 2 despite many of them requesting it. To be sure, despite defendants' representations that they are still allowing "search accommodations" for transgender female inmates under the BOP policy that existed prior to defendant Trump's Executive Order 14168, the truth of the matter is that, at least here at USP Coleman 2, there is a blanket denial of such "search accommodations" to transgender female inmates regardless of whether they have a history of violating BOP rules or not.

Thus, denying such a "search accommodation" for transgender female inmates here is the norm.

And the fact that besides plaintiff there are/is virtually no other transgender female inmate(s) with such "accommodation" confirms this.

Second, defendants overlook that Female inmates, including transgender Female inmates, in BOP women's prisons do not get punished by being forced to strip naked and bend over while spreading their butt cheeks in Front of male guard(s) nor by being groped everytime they get pat searched by male guards whenever they violate BOP rules.

So it Follows, plaintiff shouldn't be subjected to what Female inmates, including transgender Female inmates in BOP women's prisons aren't subjected to solely because plaintiff, against her will, is being held at a men's prison. Especially when plaintiff's transition to a Full Female has been slowed down (nearly stopped) significantly by the very actions of defendants which gave rise to the instant action, and which has made it much more difficult For plaintiff to eventually be housed in a women's prison.

Lastly, defendants' bogus concerns of there being security risks by allowing plaintiff Female-only pat-down & strip Searches are misplaced and unfounded. The plaintiff has had that protection since the Court Ordered it (Doc.31) (For months now) without any issues and without causing any "security risk". Moreover, nearly 40% of the staff here at USP Coleman 2 are Female.

7 OF 9

On a motion to dissolve a preliminary injunction, a movant must show a change in circumstances between the entry of the injunction and the motion that would render the continuance of the injunction inequitable. CWI, Inc., v. LDRV Holdings Corp. 2013 U.S. Dist. LEXIS 197361, 2013 WL 12123229, at *2 (M.D. Fla. Oct. 16. 2013).

Here, defendants imply that they have been complying with the preliminary injunction issued in Kingdom v. Trump ever since they filed a notice of Compliance (Doc. 19) in this case. But defendants' assertions that they are in compliance with the preliminary injunction issued in Kingdom v. Trump are belied/debunked by the record of this case. Defendants' "notice of Compliance" (Doc. 19) was filed on August 8th, 2025.

Yet, in late-September, 2025, BOP officials at USP Coleman 2 were still denying to grant "search accommodations". See Doc. 33, and exhibits attached thereto including BP-8 w/ response.

In any event, the party requesting modification or dissolution of an injunction has a heavy burden of establishing the right to relief. Ridley v. Phillips Petroleum Co., 427 F.2d 19, 22 (10th Cir. 1970). Here, defendants fail to establish that heavy burden by merely making repetitive arguments which were already raised in their motion to dismiss (Doc. 49).

Furthermore, "the dissolution of a preliminary injunction is a matter within the sound discretion of the Trial Court." Collum v. Edwards, 578 F.2d 110, 113 (5th Cir. 1978).

Moreover, even assuming, arguendo, that <u>now</u> defendants are abiding by the preliminary Injunction issued in Kingdom v. Trump, the Court should still reject and deny defendants' arguments and motion to dissolve because "the injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making." United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932)

Lastly, to the extent defendants bemoan about the Court having granted plaintiff's motion for a T.R.O. & Preliminary Injunction (Doc.4) without they having responded. Defendants overlook that they received notice of plaintiff's T.R.O. motion (Doc.17) through the mail, and a copy of the initial Complaint was sent to the "Federal Official where the [Plaintiff] is confined." (Doc.5, at 2). And on 08-07-25, AUSA Conor P. Flynn, filed a notice of appearance on behalf of the United States (Doc.18). Thus, defendants had ample opportunity to filed an opposition to ~~the~~ o.c.A. plaintiff's T.R.O. motion before it was granted.

## CONCLUSION

9 of 9

For the foregoing reasons the plaintiff hereby files her opposition to defendants' motion to dissolve (Doc.54), and respectfully asks this Court to deny such motion (Doc.54).

January, 20th, 2026.

Respectfully Submitted,
Fendii G. Skyy
Oscar Contreras Aguilar
Reg# 90039-053
U.S. Penitentiary - Coleman 2
P.O. Box 1034
Coleman, FL 33521
plaintiff -prose-

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2026, I will mail the foregoing to the Clerk of Court and will also mail, by U.S. mail, a copy of the same to: Katrina M. Seeman
Trial attorney
Torts Branch, Civil Division
U.S. Dept. of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Counsel for defendants.

By: Fendii G. Skyy, 01-20-26.
Plaintiff.

Oscar Contreras Aguilar
Reg# 90039-053
Federal Correctional Complex
U.S. Penitentiary - Coleman 2
P.O. Box 1034
Coleman, FL 33521

To: Office of The Clerk
U.S. District Court
Middle District of Florida
Golden-Collum Memorial Federal building & U.S. Courthouse
207 NW Second Street,
Room 337
Ocala, FL 34475

