In The United States District Court
For The Middle District of Florida          1 of 15

Oscar Contreras Aguilar
AkA: Fendii G. Skyy
        Plaintiff

V.

Donald J. Trump, et al.,
        Defendants

Civil No. 5:25-CV-396-MSS

FILED - USDC - FLMD - OCA
MAR 16 2026 PM12:30

## SECOND EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Previously, this Court granted plaintiff "leave to File any new demand for injunctive relief Should there be any new Circumstances that arise..." (Doc. 61 at 2, Order dated 02-05-26). Not long there-after the Court's prediction became a reality. id. On February 19th, 2026, exactly two weeks after the Court's Order being issued (Doc. 61), defendant William k. Marshall (BOP Director) Signed and issued a new BOP System-wide policy entitled "Management of Inmates with Gender Dysphoria" P.S. 5260.01 (Exhibit A, attached hereto), which imposes a blanket ban on hormone therapy and Sex reassignment Surgeries For transgender inmates with Gender Dysphoria.

The new policy clearly shows a Continuous disregard to transgender inmates (including plaintiff's)'s medical needs, and the BOP's and defendants' Continuous efforts to implement defendant Trump's Executive Order 14168 ("E.O.") which defendants Seem to prioritize more than the Eighth Amendment and Fifth Amendment.

2 OF 15

Therefore, the plaintiff hereby respectfully moves the Court to issue an emergency Temporary Restraining Order and a Preliminary Injunction directing defendants to Continue making available to plaintiff Gender-Affirming Care; to make the necessary arrangements For plaintiff to promptly receive Laser Hair Removal (facial and body) sessions/surgery, breast augmentation surgery, Voice modification surgery, Facial Feminization surgery, and any other Feminizing surgery deemed clinically indicated by a Gender Dysphoria Specialist; and enjoining defendants From implementing the new BOP Program Statement 5260.01 entitled "Management of inmates with Gender Dysphoria" as applied to plaintiff.[1]

The plaintiff hereby realleges and incorporates by reference her verified Amended Complaint (Doc. 11) and all matters of record as if Fully set forth herein.

---

[1] Exhaustion of administrative remedies is not necessary For the requested relief as this Court already Found, at the conclusion of the 02-02-26 hearing, that administrative remedies were unavailable to plaintiff. Moreover, the new Policy (P.S. 5260.01 "Management of inmates w/ Gender Dysphoria") explicitly states: "the intent of this policy is For Federal Funds to not be expended For any medical procedure, treatment, or drug For the purpose of Conforming an inmate's appearance to that of the opposite sex..." (Exhibit A, pg. 9). Thus, by its own words, the new policy, id., seeks to implement defendant Trump's E.O., and thus any efforts to exhaust administrative remedies would be a dead-end as the BOP has no authority to override a Presidential order.

## I. GENDER DYSPHORIA

Gender Dysphoria is a serious mental illness, currently defined by the Diagnostic and Statistical Manual of Mental Disorders - 5th Edition, Text-Revision ("DSM-5") as: "A strong and persistent cross-gender identification. It is manifested by a stated desire to be the opposite sex and persistent discomfort with his or her biologically assigned sex." which must be treated.

Further, the WPATH Standards of Care for the Health of Transsexual, Transgender & Gender Nonconforming People, which are the internationally accepted medical Standards for the treatment of Gender Dysphoria, explain that hormone therapy, changes in gender expression and role, and gender confirmation surgery are all forms of Gender Dysphoria treatment that people may need.

Moreover, the National Commission on Correctional Healthcare, U.S. Dept. of Justice, National Institute of Corrections and medical associations agree that the WPATH Standards apply to the treatment of Gender Dysphoria in prisons.

Furthermore, treatment and gender-affirming care (which include Laser/Electrolysis Hair Removal, breast augmentation, Voice Modification, Facial Feminization Surgery, etc---) for Gender Dysphoria are considered "medically necessary" by the American Medical Association, American Psychiatric Association, American Psychological Association, and the Endocrine Society. (Doc. 11, Verified Amend. Compl. at Page 15); See also Edmo v. Corizon, Inc., 935 F.3d 757, 769 (9th Cir. 2019), cert. denied, No. 19-1280, 2020 WL 6037411 (U.S. Oct. 13th, 2020), in which the Ninth Circuit affirmed that the WPATH Standards apply in prisons and listed lots of other Court Cases that agreed.

## II. PLAINTIFF'S GENDER DYSPHORIA DIAGNOSIS AND HISTORY OF EMOTIONAL & PSYCHOLOGICAL DISTRESS RESULTING THEREFROM.

For years now, Plaintiff has been diagnosed with Gender Dysphoria, in addition to Major Depressive Disorder, Anti Social Personality Disorder, and Cannabis Use Disorder (see Exhibits B-I, attached hereto); (Doc. 11, verified Amend. Compl. paragraphs 3).

Since July, 2024, Plaintiff has been on the Hormones Replacement Treatment ("HRT") as part of her Gender Dysphoria treatment. Plaintiff's current HRT consists of 4 miligrams of Estradiol and 200 miligrams of Spironolactone daily. Plaintiff has been maintained at the current dosage since December, 2024.

The main purpose and objective of the HRT is to Feminize plaintiff's body (Exhibit J, attached hereto) to quell plaintiff's Gender Dysphoria symptoms.

It follows then, that when HRT alone is not being effective, such as is the case here, Plaintiff has had no choice but to seek and request other forms of treatment such as Gender Affirming Care/surgery.

For years now, Plaintiff has requested and sought Gender Affirming surgery such as Laser or electrolysis Hair Removal Surgery (Face & body), etc... From the FBOP to no avail. To date, none of Plaintiff's medical requests for gender affirming care such as Laser Hair Removal have been addressed or even considered despite BOP's medical & psychology staff being aware of Plaintiff's requests and of Plaintiff's severe emotional distress and psychological pain resulting from having Facial hair and hair on other parts of her body like a man. (see Exhibits C-I, highlighted section, attached hereto)

To be Sure, not only does the BOP and BOP medical & Psychology Staff are aware of Plaintiff's Severe Symptoms of Gender Dysphoria and the Severe emotional distress & psychological Stressors related to plaintiff having Facial hair and body hair like a man From which Plaintiff Suffers From, but, additionally, defendants and BOP medical & psychology Staff have, For years now, recognized and documented the Fact that "Lack of Access to gender affirming Care" is a "Destabilizer" For plaintiff. (see Exhibit C, attached hereto).

To be more Precise, BOP Psychology Staff have Confirmed and Validated that plaintiff's "Facial hair is a Current Stressor For her gender dysphoria." (see Exhibit F, highlighted & underlined section, attached hereto).

As Far back as August, 2024, BOP Psychologists documented Plaintiff's emotional distress and psychological Stressor and "discontent with Health Services' lack of immediacy in responding to Copouts regarding laser hair removal." (See Exhibit D, Pg. 5 of 7, highlighted Sections, attached hereto); (see also Exhibit D, Pg. 1 of 7, highlighted Section, in which Plaintiff's mental deterioration resulting From Gender Dysphoria and lack of grooming supplies which led to Suicidalness is documented. attached hereto); (See also Exhibit G, Clinical Encounter - Administrative Note From BOP Health Services documenting plaintiff's "Psychological Stress of awaiting hair removal process related to Gender Dysphoria", highlighted). Thus, as Shown by the extensive documentation From both BOP's Medical and Psychological Services, plaintiff is in urgent need of gender affirming Surgery Such as Laser hair removal, etc. (Exhibits C - J).

## III. NEW CIRCUMSTANCES ARISED/FBOP's NEW POLICY ENTITLED: "MANAGEMENT OF INMATES WITH GENDER DYSPHORIA"

On February 19th, 2026, in an apparent effort to implement President Trump's E.O. 14168, defendant William K. Marshall ("defendant Marshall", BOP Director) signed and issued a new system-wide BOP policy P.S. 5260.01 ("the Policy") which explicitly concedes that "Executive Order 14168 supports this policy." (see Exhibit A, the policy, at page 6). The policy Further concedes that the "Bureau will Comply with this Executive Order Unless Compliance with the Executive Order is prohibited by a Court injunction or Court Order."[2] (see id., at pg. 6).

The policy goes Further and imposes a blanket ban on Gender-Affirming Surgeries For transgender inmates, such as Plaintiff, with Gender Dysphoria.

The policy explicitly states: "In instances when an inmate is diagnosed with GD, the Bureau will not provide sex trait modification Surgeries to address GD and the inmate will not receive Sex trait modification Surgeries to address GD." (Exhibit A, Pg. 7 OF 10, highlighted, attached hereto). No mention of individual medical assesment(s) is made in the policy pertaining to Gender-Affirming Surgeries/sex trait modification Surgeries.

---

[2] Although the policy states that it will comply with the E.O. "Unless Compliance with" the E.O. "is prohibited by a Court Injunction or Court Order," it is worth noting that currently there is no Court Injunction or Order prohibiting the enforcement of neither the E.O. nor the new policy within the BOP. And the kingdom V. Trump Injunction only orders that hormones therapy and Social accommodations be provided to transgender inmates with G.D. Otherwise, kingdom v. Trump does not enjoin the rest of the Policy.

As if the blanket ban on any and all gender-affirming surgery/care for transgender inmates with "Gender Dysphoria" without any individual medical assessment(s) alone is not enough, the policy goes even further and directs that "For inmates that have recently begun receiving hormones to address GD, the Primary Care Provider shall develop a tapering plan that includes a rapid discontinuation of the hormone intervention", and that "For inmates that have been receiving hormones to address G.D. for an extended period of time, the Primary Care Provider shall develop a tapering plan that includes an appropriately paced discontinuation of the hormone intervention." (Exhibit A, at 8, highlighted). Defendant Marshall is not named as a defendant in the kingdom v. Trump case, but he is in the instant case. The policy which defendant Marshall signed a mere two weeks after the in-person 02-02-26 hearing before this Court in the instant case, shows how defendant Marshall (who is an employee of defendant Pamela J. Bondi) continues to implement and enforce the E.O. despite the kingdom v. Trump injunction enjoining defendant "Pamela J. Bondi, ... in [her] official capacity, and [her] contractors, employees, and agents... from enforcing Executive Order 14168 as applied to medical hormone therapy and social accommodations for people in the custody of the BOP..." (see kingdom v. Trump, No. 1:25-cv-691-RCL (D.D.c) Doc. 68 at 2.). Which shows a blatant disrespect for the Court's injunction in kingdom v. Trump.

**IV.        LEGAL ARGUMENTS**

As an initial matter, the plaintiff respectfully emphasizes that "where, as here, a plaintiff proceeds pro se, we must 'construe the pleadings liberally' and afford the petitioner the benefit of any doubt.'" see Boquist v. Courtney, 32 F.4d 764, 774 (9th Cir. 2022).

This liberal pleading standard applies to the factual allegations of a pro se plaintiff's complaint. Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

In her Verified Amended Complaint ("VAC") plaintiff clearly requested as part of her sought relief: "preliminary and permanent injunction enjoining defendants and BOP from discontinuing plaintiff's gender-affirming care; preliminary and permanent injunction maintaining the status quo (enforcement of BOP's Transgender Offender Manual P.S. 5200.08)" (Doc. 11, VAC, at 5). Plaintiff also requested a "preliminary and permanent injunction enjoining defendants from enforcing and/or implementing Trump's Executive Order No. 14168 as to plaintiff." Id.

Additionally, in her VAC, plaintiff clearly stated: "without Court intervention, defendants will soon cease providing plaintiff gender-affirming care." (id., at 18). Plaintiff, a pro se litigant, can "bolster [her] claims by making more specific allegations in documents attached to the complaint and in later filings." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (Courts are required to afford a pro se litigant "the benefit of any doubt in ascertaining what claims [she] 'raised in [her] complaint and argued to the district court'".).

As to her instant motion and emergency request for gender-affirming care/surgery (Laser/electrolysis Hair Removal, breast augmentation surgery, Voice modification Surgery, etc... and referral to a Gender Dysphoria Specialist), the Eleventh Circuit has made clear that the "Eighth Amendment's prohibition against 'cruel and unusual punishments' protects a prisoner from 'deliberate indifference to serious medical needs'." see Kuhne v. Fla. Dept., of Corr., 745 F. 3d 1091, 1094 (11th Cir. 2014).

Thus, here, the plaintiff has a substantial likelihood of success on the merits of her Eighth Amendment claim regarding defendants' deliberate indifference to her serious medical needs. The new policy signed by defendant Marshall imposes a blanket ban on hormone therapy and sex reassignment surgery which, on its face, violates the Eighth Amendment. see Fields v. Smith, 653 F. 3d 550, 557-58 (7th Cir. 2011) (Wisconsin's blanket ban on hormone therapy and sex reassignment surgery constituted facial violation of Eighth Amendment); De'Lonta v. Angelone, 330 F. 3d 630, 634-35 (4th Cir. 2003) (allegations of denial of treatment based on blanket policy rather than medical judgment sufficient to support claim for deliberate indifference); Allard v. Gomez, 9 F. App'x 793, 795 (9th Cir. 2001) (deliberate indifference if transgender prisoner was denied hormone therapy as result of blanket rule); Houston v. Trella, No. 04-cv-1393, 2006 WL 2772748, at *8 (D.N.J. Sept. 25, 2006) (policy of withholding hormone treatment violates Eighth Amendment);

Barrett v. Coplan, 292 F. supp. 2d at 286 (D. N.H. 2003) ("A blanket policy that prohibits a Prison's medical Staff from making a medical determination of an individual inmate's medical needs and prescribing and providing adequate care to treat those needs violates the Eighth Amendment."); kosilek v. Spencer, 889 F. supp. 2d at 176 (D. Mass. 2012) (same).

Moreover, to the extent that the new policy seeks to implement defendant Trump's political agenda by prohibiting the use of "Federal Funds... for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex" (Exhibit A, pg. 9), such rationale is of no moment. see Harris v. Thigpen, 941 F. 2d 1495, 1509 (11th Cir. 1991) (treatments cannot be denied merely because they are expensive). Furthermore, a prisoner's "receipt of some medical care does not automatically defeat a claim of deliberate indifference if a factfinder could infer the treatment was so 'blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." Edward v. Snyder, 478 F. 3d at 831 (7th Cir. 2007); Johnson v. Doughty, 433 F. 3d 1001, 1013 (7th Cir. 2006) (Prisons cannot Simply choose an "easier course of medical treatment that they know is ineffective"). Moreover, the policy explicitly states that it will comply with defendant Trump's E.O. "unless compliance... is prohibited by a court injunction or Court Order." (Exhibit A, pg. 6), which in and of itself violates clearly-established precedent from this Circuit.

See Ancanta V. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)(Prison's refusal to provide specialty consultations from an orthopedic specialist or a psychiatrist without court order was deliberate indifference).

As to irreparable harm, the plaintiff here has shown through BOP's own psychology and medical records that she is, and has been, suffering severe emotional distress and psychological pain as a result of having facial hair and body hair like a man. More importantly, multiple BOP psychologists and medical staff have validated and recognized plaintiff's psychological stressors & pain resulting from having facial hair. (see Exhibit F, highlighted; exhibits C-J, attached hereto). As documented by BOP psychology records, the lack of gender-affirming care is a "destabilizer" to plaintiff (Exhibit C, highlighted, attached hereto). And having facial hair like a man has been detrimental to plaintiff and exacerbated her Gender Dysphoria symptoms to the point of feeling suicidal at times. (see Exhibit D, Pg. 1, highlighted, attached hereto). Thus, there can be no genuine dispute that plaintiff is in urgent need of gender-affirming surgery such as, at a minimum, Laser/Electrolysis Hair Removal, as well as breast augmentation, voice modification surgery, etc... At the very least plaintiff should be allowed Laser/Electrolysis Hair Removal surgery/sessions until her facial & body hair is permanently gone. It is clinically indicated here by BOP's own records.

And, to date, the plaintiff continues to suffer severe emotional distress & psychological pain as a result of having facial & body hair like a man. As stated by inmate-witness Vinny Ostolaza: "plaintiff spends hours a day in front of her mirrors plucking her facial hair with a tweezer. This happens at any time of the day, either day or night. Her frustration and psychological stress is so obvious and severe that she oftenly leaves marks all over her face by digging into her face with the tweezers attempting to pluck her facial hair out. I have seen her sometimes get up to use the toilet in the middle of the night and looking at her face in the mirror and she starts using the tweezers to pluck her facial hair by any means necessary. For hours."

Furthermore, witness Ostolaza states: "I have also seen plaintiff in so much distress to the point where she starts crying because of her facial hair which she believes is a 'curse'. I have had to calm her down many times by reassuring her that she is gorgeous regardless of the facial hair." "At one point plaintiff was planning to remove her facial hair with a flame with the hopes that it would burn and kill the hair roots and not grow back. I had to talk her out of it and held her down when she broke down and started crying." (see

Exhibit K, Declaration of Vinny Ostolaza, at pg. 2, attached hereto).

Thus, defendants' own records and witnesses' testimony clearly show here that, without interim judicial intervention, defendants will continue to be deliberately indifferent to plaintiff's serious medical needs and risk of harm. "It is well-established that the deprivation of Constitutional rights unquestionably constitutes irreparable injury." See Doc. 31 at 7, this Court quoting Gayle V. Meade, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020).

Lastly, the balance of equities and public interest favors injunctive relief. This is because by granting the instant motion and the requested relief the Court would simply be maintaining the status quo. The latest update of the transgender offender manual (P.S. 5200.08) was approved by the FBOP on January 13th, 2022. and was followed until at least the issuance of the January 20th, 2025 E.O. (Doc. 31 at 8). That manual/policy allowed transgender inmates "Hormone therapy or other medical treatment... after an individualized assessment of the requested inmate by institution medical staff." (Doc. 31-1 at 8). That same manual further allowed transgender inmates to request and receive gender-affirming surgery and "referral to a gender affirming surgeon." (Doc. 31-1 at 9). Thus, requiring defendants to provide gender-affirming care/surgery to plaintiff

"when they had been doing so for at least the past three years, would result in minimal harm to the government." (Doc. 31 at 8).

"Additionally, 'it is always in the public interest to prevent the violation of a party's Constitutional rights.'" (Doc. 31 at 8, quoting Hobby Lobby Stores, Inc. v. Sebelius, 723 F. 3d 1114, 1145 (10th Cir. 2013)(en banc)). As such, the equities favor plaintiff here.

WHEREFORE, the plaintiff respectfully prays and urges the Court to grant the instant motion for a T.R.O. and/or Preliminary Injunctive relief and order defendants to continue making available to plaintiff gender-affirming care/surgery; to make the necessary arrangements for plaintiff to promptly receive, at a minimum, Laser/Electrolysis Hair Removal (Face & body) surgery/sessions until her facial & body hair is permanently and completely removed; to make the necessary arrangements for plaintiff to receive Breast Augmentation Surgery, Voice Modification Surgery, and/or any other feminizing surgery recommended or deemed clinically indicated by a Gender Dysphoria Specialist; to make the necessary arrangements for plaintiff to be promptly medically evaluated by a Gender Dysphoria Specialist; and enjoining defendants from implementing or enforcing the new BOP Program Statement 5260.01 entitled "Management of Inmates with Gender Dysphoria" as to plaintiff individually; and/or any other relief the Court deems appropriate.

15 OF 15

March 3rd, 2026.
Coleman, Florida.

Respectfully Submitted,
Fendir G. Skyy
Oscar Contreras Aguilar
Reg# 90039-053
U.S. Penitentiary-Coleman 2
P.O.Box 1034
Coleman, FL 33521.
Plaintiff.

## CERTIFICATE OF SERVICE

I hereby Certify that on this 4th day of March, 2026, I will mail by U.S. Mail the Foregoing "Second emergency motion For a T.R.O. and Preliminary Injunction" to the Clerk of Court For Filing, which will automatically notify and provide Counsel For defendants a electronic Copy of the Same via ECF. I will also mail by U.S. Mail a Copy of the Same to Counsel For defendants at: Attn: katrina Seeman
            Trial Attorney
            Civil Division
U.S. Dept. of Justice
P.O. Box 7146,
Ben Franklin Station
Washington D.C. 20044
            Counsel For defendants.

By: Fendir G. Skyy
        Plaintiff   03-04-26.