OSCAR CONTRERAS AGUILAR      ( Emergency Motion For Injunction Order
        v.                  ( Protection For Prisoner Witnesses
DonalD J. Trump             (
                            ( # 5:25-cv-396-MSS-PRL

Ms. Nash, pro-se, request A temporary restraining order that requires defendants to take steps to end the retaliation Against prisoner witnesses.

MAR 26 2026 PM1:31
FILED - USDC - FLMD - TPA

A) Injunction Order Protection For Prisoner Witnesses

In Armstrong v. Newsome, Case # 4:94-cv-02307-CW, A federal district court granted A temporary restraining order that requires the defendants to take steps to end the retaliation Against prisoner witnesses. Here, the court should do the same.

Specifically, guards refused to Act when Ms. Nash sought protection from prisoners And staff pursuing her for sex, then retaliated Against her when she filed complaints, stating "that black bitch judge can't protect you now". Given these circumstances, the court should grant Nash's request for An injunction order.

B) The Defendants Thumb Their Noise At The Court

Prison guards physically And sexually assaulted Ms. Nash (or allowed other inmates to do so).

Here, this court — like the court in Armstrong v. Newsom, #4:94-cv-02307-CW, should "find that plaintiffs had shown A likelihood of success on the merits on their claim that defendAnts And their employees had violated the courts order not to retaliate Against prisoner witnesses"

The point is the court specifically ordered the defendAnts not to tAke retaliAtory Action Against the witnesses for pArticipating in the lAwsuit. Nevertheless, the defendAnts retaliated by having LieutenAnt Berry violently AttAck Ms. NASH.

Specifically, Ms. NASH was beaten while restrained And compliant, And then the LieutenAnt bit Ms. NASH on the fAce And breast taunting NASH by stating "I know what you said in court" And "that blAck bitch judge cAn't protect you Now". Afterwards, Ms. NASH was transported to A hospitAl where she recieved five StAples to close A head wound. For these reasons, Ms. NASH has shown A likelihood of success on the merits.

(page #2)  OSCAR CONTRERAS AGUILARS  Civil Case No.

Plaintiff

v.                                 C 5:25-cv-396-MSS-PRL
                                   C
Donald J. Trump, et al             C

C.) Retaliation By Inmate And Staff Abusers

Acts of retaliation taken in response to Nash's testimony Against defendants include 1.) removal from preferential housing; 2.) placement in segregation; 3.) denial of crisis counseling; And 4.) subjection to physical And sexual Assault by both inmates And staff. Ms. Nash Again contacted PREA staff to report ongoing Abuse, And pleaded with prison officals for A higher level of protection, but to no avail.

The point is this court, like the court in Armstrong v. Newsome, # 4:94-cv-02307-CW, should find that Nash were likely to prove that defendants had " been" unable or unwilling to address the safety concerns of the witnesses in their current housing placements". Indeed, the defendants directly participated, encouraged, authorized, or acquiesced in retaliatory Acts saying " You testified Against the Warden"

D.) A CULTURE OF RECKLESS DISREGARD OF HUMAN RIGHTS

Lieutenant Berry beat Ms. Nash to such A degree, that when the EMT Arrived they believed Nash to be dead. Afterwards, Ms. Nash was hospitalized

with facial And head injuries.

The point is this court, like the court
in Armstrong v. Newsom, should find that
Ms. Nash's life would " remain in
dAnger And her future participation as
[A] witness will be jepardized "
Note: the court ordered the defendAnts
to develop a plan to transfer the
witnesses to Another prison or place
them in community placement. The transfer
Could not be A " administrative segregation
OR punitive housing". "If custodial housing
placement was made " complete surveillance
coverage" was deemed preferable "
(see: Armstrong v. Newsom, USDC, (N.D. CAL),
# 4:94-CV-02307-CW

<u>Relief Requested</u>

#1.) Ms. Nash is being subjected to
retaliation by inmate And staff Abusers.
The defendAnts knew Ms. Nash was in
dAnger, yet no one - Not even PREA staff -
lifted A finger in support saying " You
testified Against the wARden". Here, the
court should order the defendAnts to
develop A plan to transfer Ms. Nash or
place her in community placement

#2.) Isolation units Are associAted not
only with increased rates of Abuse
due to decreased visibility And oversight

but also with adverse mental health effects including increased risk of self-harm and suicide. For these reasons, Ms. Nash seeks an order that the requested transfer not be to an administrative segregation or punative housing units.

#3 In retaliation for testifying against defendants the warden denied Nash's earned federal time credits.

Specifically, before Nash testified PREA staff authoritatively promised to reverse the wardens retaliatory denial of Nash's earned federal time credits saying " this has been previously answered at the institution level. Please see your unit manager for further guidance on the next step in this process.

Now — after Nash gave evidence of PREA staffs wrongdoing — they have reversed their previous approval of Nash's request regarding earned federal time credits stating " you testified against the warden". For these reasons, the court should order the defendant Warden E.K. Carlton to approve the application of Nash's earned federal time credits.

To be clear: Ms. Nash not only showed that PREA staff had previously granted her request for corrective action regarding her earned federal time credits. (Exh D1 & D2), but also demonstrated that they reversed that decision after Nash's testified against defendants.

Additionally, Nash offered facts sufficient to allege that no rational peneological justification existed for the denial of Nash's request under PREA, section 115.67, agency protection against retaliation (Exh F )

Finally, the statement "you testified against the warden" shows that retaliation is the actual motivating factor for the adverse action.

#4) ms. Nash has been raped over 200 times in BOP custody, and this figure is increasing every month. Nevertheless, the defendants provide solutions that don't solve. Accordingly, Ms. Nash request that the court order the BOP to administratively review transferring Nash to community placement. Indeed, when called to answer the question of whether Defendant should be released, Nash's sentencing judge ruled that Nash "should transition into a residential reentry center during both

(page #4)

the end of her term of incarceration And the beginning of her term of Supervised release" (see: US. v. NASH, case # 1:13-CR-00467, Doc# 343, pageID # 2553 (N.D. OHIO) 2-6-2026 (finding that defendant's placement in A residential reentry center will assit defendant in transitioning into the community And equip her with stability And skill that should minimize her risk of recidivism." ECF # 322, pgID # 2428 )

#5) The sexual Abuse of MS. NASH Is rampant but goes largely unchecked as A result of cultural tolerance; orchestrated cover-ups, And organizational reprisals against MS. NASH. Specifically, in order to conceal officer misconduct the defendants not only refused to provide MS. Nash with requested Administrative remedy forms, but flatly refuse to transfer Nash's PREA reports to A higher level of review where corrective Action can be taken (Exh 9 )

The point is the warden repeatedly failed to follow proper procedure under PREA And BOP policy implementing PREA, Nonetheless, And in a caculated move to avoid discovery, the warden refuse to confer with outside PREA staff — this was A premediated

plan to stonewall the resolution of Nash's PREA claims. (Exh H)

For these reasons, And to ensure that NASH is afforded her rights under PREA, the court should order the respondant to forward A copy of this filing And the Attached exhibits to 1.) The National PREA Coordinator; 2.) The Regional PREA coordinator; 3) The Special Populations Oversight Committee And 4.) The DOJ's civil rights Division.

#6 In Alishea Kingdom v. Donald J. Trump the court granted Transgender plaintiffs motion for A protective order. (see: Alishea Kingdom v. Donald J. Trump, et al, Case # 1:25-cv-00691-RCL, DOC# 124, Filed 2-19-2026.) That same logic applies with equal force here.

The point is MS. NASH will be raped again, its merely A question of when. the court has inherent authority to grant protective order under such circumstances And has demonstrated good cause sufficient for issuance of A protective order.

X _____